**ORIGINAL**

UNITED STATES DISTRICT COURT

for the

Northern District of Texas

Ft. Worth Division

*FILED — U.S. DISTRICT COURT, NORTHERN DIST. OF TX, FT. WORTH DIVISION — 2017 JUL 14 PM 2:40 — CLERK OF COURT*

| | |
|---|---|
| DAVIE HARRISON | Case No. 4-17CV-328-Y |
| Plaintiff, | § COMPLAINT FOR VIOLATION |
| | § OF CIVIL RIGHTS PURSUANT |
| | § TO 42 U.S.C. § 1983, AND 42 |
| -V- | § U.S.C. § 12101, ENACTING THE |
| | § AMERICANS WITH DISABILITIES |
| FAYEZ MOHAMMED, OWNER: | § Act of (1990), and § 504 OF THE |
| TRISTAR CARE CENTER INC., | § REHABILITATION ACT OF 1973, |
| et al. | § PUB.L.NO.93-112, 87 STAT 394 |
| Defendants. | § (Sept. 26, 1973) CODIFIED AT |
| | § 29 U.S.C. § 701 et |
| | § seq. |
| | § "JURY DEMAND" |

## "FIRST AMENDED COMPLAINT."

COMES NOW unto the Court, Davie Harrison, plaintiff, appearing through pro se representation and respectfully shows unto the court the following:

### JURISDICTION

1. In addition, this Honorable Court has jurisdiction to hear this case pursuant to 42 U.S.C. 12101; in enacting the Americans with Disabilities Act of 1990, and Section 504 of the Rehabilitation Act of 1973, Pub.L.No.93-112, 87 Stat 394 (Sept. 26, 1973) Codified at 29 U.S.C. § 701 et seq. This is in addition to the jurisdiction intertwined with plaintiff's memorandum of law in support of his § 1983 application dated by the district clerk April 14, 2017.

2. This first amended complaint is presented under Rule 15 (a), Fed. R.Civ.P, and Rule 15 (c) (1) (B) were plaintiff request that Jean Compton be taken out this Civil Rights Complaint.

## THE ELEVENTH AMENDMENT AND

## SOVEREIGN IMMUNITY

3. The Eleventh Amendment does not forbid suing state officials for damages in their individual capacities, and for declaratory or injunctive relief in their official capacities. Local governments even in damages suits. Plaintiff furthermore contends that the defendants in this case was not, and is not acting as an "arm of the state and do not have sovereign immunity from lawsuits authorized by federal law. SEE: *Northern Ins. Co. of New York v. Chatham County, Georgia, 547 U.S. 189, 194, 126, S. Ct. 1689 (2006)*.

4. Thereby, plaintiff makes clear that he is suing the defendants in this case for compensatory and punitive damages from them being state officials, so they are being sued in their individual and personal capacities. Plaintiff furthermore sued the defendants in their official capacity for an injunction.

## THE FEDERAL DISABILITY STATUTES (ADA) AND

## SECTION 504 OF THE REHABILITATION ACT

5. As alleged in this case, the defendants' acts, and/or omission amounted to discrimination in violation of the (ADA) and Section 504, which is a safety net where plaintiff's serious medical needs, and personal needs by plaintiff as a disabled were not met. In a sense, there are three (3) theories of discrimination under the (ADA) and Section 504: (1) intentional discrimination; (2) discriminatory impact, and (3) to the extent that Title II is circumscribed by sovereign immunity in future cases, Section 504 will pick up the slack and Section 504 rests on the Spending Clause: The defendants accepting federal money has an agreed-upon quidproquo

obligation to implement disability law requirements that are virtually the same as those required by the (ADA) American with Disabilities Act.

## SUMMARY OF ARGUMENT

## PLAINTIFF STATES A CAUSE OF ACTION UNDER

## SECTION § 1983

6. Plaintiff contends he has stated a cause of action under Section § 1983. Plaintiff alleged two (2) elements: (1) challenged conduct by a person acting under color of law, and (2) challenged conduct that deprived the plaintiff of a Federal right. For plaintiff to furthermore prevail under Section § 1983, plaintiff proves that the defendants' unconstitutional action(s) were the "cause in fact" of the plaintiff's injury.

## "SUPPLEMENTAL JURISDICTION"

## PURSUANT TO 28 U.S.C. § 1367

7. SUBCHAPTER B. TORT LIABILITY GOVERNMENTAL UNITS. The defendants in this case are governmental. Plaintiff makes a State claim against said defendants which are liable in this State for: (1) personal injury proximately caused by the wrongful act(s) or omission(s) of negligence of an employee/defendants within his/or her scope of employment. (A) Personal injury arises from the non-operation Motor-Driven vehicle - Bi Pap Machine. (B) The employee/defendants would be personally liable to the plaintiff according to Texas law; and (2) The personal injury was caused by a condition or use of tangible personal or real property if the governmental unit would, were if a private person, be liable to the claimant/plaintiff according to Texas law.

8. The Court has jurisdiction over the plaintiff's claim of violation of Federal constitutional rights under 42 U.S.C.§ 1331(1) and 1343.

9. The Court has supplemental jurisdiction over the plaintiff's State law tort claims under 28 U.S.C. § 1367.

## PARTIES

10. The Plaintiff, Davie Harrison, was a resident at the Tristar Care Center, Inc. during the events described in this complaint.

11. Defendants Fayez Mohammed, Rebecca Medlock, Marci Hartón, Bonita Suwanasung, and Julie Marquez are employees and/or owner at Tristar Care Center, Inc. They are sued in their individual capacities.

12. Defendant Fayez Mohammed is the owner of said Tristar Care Center, Inc., whom is the overseer of this company. He is sued in his individual capacity.

13. Defendant Rebecca Medlock, was the Administrator in charge over the operation of this facility. She is sued in her individual capacity.

14. Marci Hartón, Business Officer Manager, was in charge of money and medical records, and she is sued in her individual capacity.

15. Bonita Suwanasung, was the Director of Nursing, and was overseer over nursing and medical care. She is sued in her individual capacity.

16. Defendant Julie Marquez, L.V.N., was a nurse at Tristar Care center. She is sued in her individual capacity.

17. Defendant Yvonne K. Haug, M.D. was "the doctor for this facility by contract. She is sued in her individual capacity.

18. The plaintiff, Davie Harrison, was a resident at Brentwood Skilled Nursing & Rehab, during the events described in this complaint.

19. Defendant Oraewe Valentine, Administrator, is sued in his individual capacity.

20. Defendant Angela Davis, L.V.N., who did schedule and administer medications for residents, and treatment. She is sued in her individual and official capacities.

21. All the defendants have acted, and continue to act, under Color of State Law at all times relevant to this complaint.

## FACTS

22. On December 18, 2014, plaintiff was release from the Montford Medical facility to Tristar Care Center, Inc., with serious medical conditions and needs. Plaintiff's diagnoses were IDDM Type one diabetes, HTN, hypertension, S/P amputation LLL, Severe DJD Right Knee, Coronary Artery Disease, Chronic Lung Disease, Chronic Kidney Disease/Chronic Renal Insufficiency.

23. On January 20, 2015 Plaintiff went to defendant Dr. Haug, and was given a basic physical. In her medical records report, she stated that hypertension was severe, on multiple meds suspect "[w]orsened by [sleep apnea]. Defendant Dr. Haug noted that plaintiff suffers from edema coming from the ulcer, and only ordered a healing band aid for three (3) days.

24. It is very important to note, that this said doctor never made any referral to a to a Specialist for the other major medical issues stated in item 15.Defendant Dr. Haug never ordered a BIPAP machine. Sleep apnea is very dangerous, and it can cause death. Dr. Haug's denial of adequate medical decisions to plaintiff's health, was a clear act of deliberate indifference to his serious medical needs, that played a vital role of plaintiff being in a coma for a month near death in Baylor hospital (& 1 month there for in-patient recovery which was very difficult).

25. Plaintiff suffered intense pain day a night (other than sedation periods), and still does. Plaintiff was in fear that he was going to die. The reason plaintiff was denied adequate medical treatment, was due at the time plaintiff was not approved for medicaid. See exhibit (a) Dr.

Haug's medical records showing she prescribed potassium Chloride, that was factor to plaintiff's kidney failure.

26. Defendant Rebecca Medlock, knew that this nursing facility could not meet plaintiff basic needs. Plaintiff is an amputee, and wheelchair stricken. The bathroom in plaintiff's room was too small for his wheelchair. This would cause plaintiff to wait for an untimely CNA transport, to a toilet and shower that was closed down in the next uninhabited building, and not state certified to have access to. The delay's would cause plaintiff to" [d]efecate on himself, on several occasions, which caused embarrassment!, and was "very" humiliating .This facility was so inadequately equipped to meet plaintiff's serious medical needs. See exhibit (B) discharge letter from this defendant saying this building could not accommodate plaintiff's needs.

27. Let the record reflect, that all the defendants received demand letters that coincide with petition. These defendants showed deliberate indifference to plaintiff's serious medical needs.

28. Defendant Bonita Suwanasung, was the director of nursing doing this regime and knowledge of plaintiff's ulcer, with edema, and the seriousness of the ulcer. This defendant refuse to have plaintiff sent to the hospital. The defendant and plaintiff's family member had a telephone conference on this subject matter. Plaintiff family lived 5 hours from this facility. With an antagonistic demeanor, the defendant told plaintiff's family she could take plaintiff to the hospital, when plaintiff and family member begged for him to be sent to the hospital. It's evident that this defendant was unprofessional and showed deliberate indifference to plaintiff's serious medical needs and overall well-being.

29. Defendant Julie Marquez, L.V.N. and employee for Tristar Care Center, Inc., on 02/25/15 approx. 10:30 P.M., defendant Marquez entered plaintiff's room to do a catalysis. The catheter the defendant was using was too large to enter plaintiff's penis. Plaintiff was in "[E]xcruciating

pain"...This nurse would not stop. There was heavy bleeding. Another nurse entered the room and told defendant Marquez that she was using the wrong size catheter. Nurse Ed left the room and came back with the right size catheter, and defendant finally stopped, but the damage had been done. It is very important to note, that there are (D.A.D.S) reports about these matters. This nurse's actions constitutes the unnecessary and wanton infliction of pain proscribed and in violation of the Eighth Amendment.

30. Defendant Marci Hartón, is/was the business office Manager for Tristar Care Center, Inc., while plaintiff was at this facility. Defendant Medlock conspired with Marci Hartón, by holding plaintiff's mail that was supposed to be sent to social security benefits, to intentionally, knowingly and arbitrarily delay the benefits and hold plaintiff pass the 90 day rule (short-term), so they could get plaintiff's back pay money from social security which plaintiff desperately needed. Once these defendants knew that plaintiff was pass the 90 days, defendant gave plaintiff the 30 day notice to leave the facility.

31. The discharge letter .In exhibit-B. Since the building structure cannot be changed to accommodate plaintiff's needs, it is in his best interest to transfer to a more appropriate setting. Summarizing the acts and omission of these said defendants, was harm to plaintiff's future health & safety, and the harm was sufficiently serious. These defendants were responsible for the harm, knew and ignored an 'excessive' risk to plaintiff's health and safety, which will be shown further in this memorandum.

32. When plaintiff left Tristar Care Center, on or about 04/17/2015. Plaintiff and was admitted to Brentwood Skilled Nursing & Rehabilitation. His primary nurse was defendant Angela Davis. Number 15 reveals all the medical diagnoses plaintiff had. Plaintiff was never seen by any doctor, routinely or when consistently requested, due to real concern about health status, again

due to that he had not been approved for social security, in order to receive Medicaid or other if eligible medical benefit. Plaintiff still shouldn't have been constantly denied serious medical care (and 'any' actual medical care) beyond just medicines, and a few looks, wipes and bandages to a foot wound, which was still serious due to my diabetic status.

33. On 5/26/15, Defendant Angela Davis came to claimant's room, and told him she had something to tell that plaintiff might not like. She told plaintiff she had not been giving his long acting insulin. This was causing:' plaintiff's blood sugar to be at unsafe levels. Plaintiff went to defendant Valentine about this serious matter. A meeting was held and defendant nurse Angela Davis was suspended until the investigation was completed. On the return of defendant nurse Davis, she was not to do any medical care or treatment to plaintiff.

34. Defendant Davis would come to the room, barely by the door where plaintiff couldn't hardly see her, but could hear her whispering to the temporarily assigned aid/nurse, however plaintiff's roommate could witness her drawing something in a syringe, and another nurse would inject plaintiff with what was in the syringe. A few days later plaintiff begin to have delusions, could not control his bladder, barely speak on a phone or hold objects without severely shaking and dropping them. Plaintiff has told family support something was wrong and wasn't feeling well at all, but couldn't talk much at that time on the phone. Plaintiff's roommate called family support to alert them of his serious and changed condition.

35. Family support, Florence Hill (over the phone) told plaintiff to quickly urge even beg if necessary for a blood test that could possibly determine my true health status at that time. A blood test was done and plaintiff was rushed to Baylor hospital with acute respiratory failure requiring mechanical ventilation. See also exhibit(c), an email from Defendant Valentine showing that defendant Davis had been suspended.

36. Brentwood nursing staff/administration prescribed the same medications (that Plaintiff was taking at Tristar Care Center, Inc., without any medical treatment/check-up, other than giving meds, insulin, etc., and a few days of 'initial' brief wound care from their wound care technician, that plaintiff and family support 'consistently' asked for), one of which that induced the kidney failure. See exhibit-D Baylor University Medical Center Consultation when plaintiff was admitted on 06/11/2015 page 4 of 4. Plaintiff was on potassium supplementation as an """[O]utpatient] and this did lead to some of his hyperkalemia on top of his underlying likely hyporeninemia and hypoaldosteronism state.

37. Plaintiff has shown that the defendants' alleged in this memorandum he has established a violation of plaintiff's right of his Eighth Amendment medical care rights, and have shown(l) that plaintiff had/have a serious medical need, and (b) the defendants acted with deliberate indifference toward it.

38. Plaintiff contends, that from December 18, 2014 to April 17, 2015 while at the Tristar Care Center, Inc., he never saw or followed up with a doctor, to examine or test all the ailments shown in this petition. Plaintiff only got an 'initial' basic office visit and prescribed medications after being admitted to Tristar. After being admitted at Brentwood Skilled Nursing & Rehab, on or about April 18, 2015 am, until he was admitted to Baylor University Medical Center in a severely life- threatening condition.

39. It was six months without adequate medical care for all of plaintiff's serious medical needs and conditions.

## AMERICAN WITH DIABILITIES ACT (ADA) CLAIM

40. Plaintiff sues the defendants pursuant to the American with Disabilities Act 42 U.S.C. §§ 12101-213 (2006). Plaintiff is entitled to a claim under the ADA were he has a physical impairment that substantially limits him of several of the major life activities.

41. Plaintiff is an amputee, wheelchair bound with serious medical condition and should be entitled to relief under the statute.

42. The Eighth Amendment can be based upon harm to future health. The acts of these defendants were a clear act of (carelessness) and actual malice (intent to cause harm). This amounts to recklessness.

43. In summary, plaintiff has established "deliberate indifference," and made his burden of proving the following:

44. that there existed a great degree of risk of physical harm to Plaintiff at these two nursing home facilities;

45. that the defendants knew of this risk;

46. that the Defendants took no or wholly inadequate action(s) in the face of actual knowledge of a risk to plaintiff; and

47. that the Defendant's actions and/or omissions were more than inadvertence, lack of due care, negligence or error.

## ARGUMENT

48. Pursuant to the Federal Rules of Civil Procedure 15 (a) Amended and Supplemental Pleadings, plaintiff's Complaint states a claim under the Eighth Amendment of the United States Constitution. The U.S. Supreme Court has ruled that "deliberate indifference to serious medical

needs" is cruel and unusual punishment.; SEE: *Estelle v. Gamble, 429 U.S. 97, 104 (1976)*. The complaint alleges facts that state a constitutional claim under this standard.

49. Plaintiff relies on the ruling in *Gomez v. Toledo, 446 US 635 638 (1980)*. In Gomez, the United States Supreme Court determined that only two elements must be pled to properly assert a cause of action under 42 USC § 1983. First the plaintiff must specifically identify the constitutional right of which he was deprived. Plaintiff must assert that the person who deprived him of that Federal right, acted under Color of Law. Plaintiff has proven by medical records and relevant documentation in the record, that the defendants' unconstitutional actions were the "cause in fact" of the plaintiff's injuries that continue to cause "great" adversity on a daily basis and serious future health concerns.

50. Based on the holding of the U.S. Supreme Court that the "wanton and unnecessary infliction of pain" constitutes cruel and unusual punishment. The defendants' acted with "deliberate indifference" to Plaintiff's medical and physical safety in accordance to "well established law". Plaintiff asserts that these injurious and unlawful acts and/or omissions also constitute Psychological torture due to psychological effects, and the physical harm inflicted, including the dehumanized acts (ie., as previously mentioned, to be caused to consistently defecate and urinate on Plaintiff's self unnecessarily), involved as documented and witnessed, which is not in line with the U.S. and the UN's prohibition against torture.

51. In establishing "Deliberate Indifference" 1). [restated] that there existed a "great degree of medical and physical harm" (including the threat and fear of violence at Tristar Care Center, Inc. & Brentwood Nursing & Rehabilitation Phase II); 2). [restated] that the defendants knew of these risks; 3) [restated] that the defendants took no or wholly inadequate action (where there is a

reasonable deduction that these acts were done knowingly, intentionally, arbitrarily) in the face of actual and factual knowledge of risks to Plaintiff and 4). [restated] that the defendants' actions and/or omissions were more than inadvertence, lack of due care, negligence or human error. These actions reflect reckless behavior, callous neglect and/or thoughtless disregard equivalent to a flagrant and/or remarkably bad failure to protect. It is obduracy and wantonness, not just inadvertence or error in good faith that characterizes this prohibited conduct.

52. The prohibition against torture is firmly embedded in customary international law, international treaties signed by the United States, and in U.S. law. As the U.S. Department of State has noted, the "United States has long been a vigorous supporter of the international fight against torture…Every unit of government at every level within the United States is committed, by law as well as by policy, to the protection of the individual's life, liberty and physical integrity" [U.S. Department of State, "Initial Report of the United States of America to the UN Committee Against Torture." Oct 15, 1999. (15 Nov. 2001)].

## RELIEF REQUESTED

53. Plaintiff seeks separate relief from each entity in this claim. Plaintiff seeks Award of compensatory damages in the following amounts:

54. $250,000 against Tristar Care Center Inc., which is owned by defendant Fayez Mohammed.

55. $50,000 jointly and severally against defendants for the physical and emotional injury resulting from their failure to provide adequate medical care to the plaintiff against Rebecca Medlock, Marci Hartón, Bonita Suwanasung, and Julie Marquez. $100,000 against defendant Yvonne K. Haug, M.D. for the physical and emotional injury resulting from her failure to provide adequate medical care to the plaintiff.

Plaintiff seeks damages against Mid-Texas health Care, whom Defendant Haug, M.D. works under.

56. $300,000 against Brentwood Skilled Nursing & Rehab Inc. Against pass and new administration, that use the same name of this nursing home by the past owners.;

57. $90,000 jointly and severally against defendants Valentine, and unknown named owner (s).

58. Plaintiff respectfully and humbly leaves it up to the Court, that the defendants provide or pay for the future damages plaintiff has a sustained, and for the life span of plaintiff that has been shortened, along with punitive damages.

59. Let the record reflect, that plaintiff sent out demand letters to defendants in this lawsuit.

60. That the Court/Jury grant such relief as it may appear that plaintiff is entitled.

June 30, 2017

<u>Respectfully Submitted,</u>

*[signature: Davie Harrison]*

"/s/"Davie Harrison
DAVIE HARRISON
PO BOX 821061, NRH, TX 76180
EMAIL: peaceful@live.com
Ph. No. (817) 489-4836
Alt. No. (214) 489-9372